**United States District Court**
**District of Massachusetts**

```
                                  )
Holcim – NER, Inc., f/k/a         )
Aggregate Industries – Northeast  )
Region, Inc.,                     )
                                  )
            Plaintiff,            )     Civil Action No.
                                  )     21-11861-NMG
            v.                    )
                                  )
Town of Swampscott and Town of    )
Swampscott Select Board,          )
                                  )
            Defendants.           )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of an alleged unconstitutional taking by the Town of Swampscott ("the Town") and the Town of Swampscott Select Board ("the Board") (collectively, "the defendants") in connection with certain permit restrictions applicable to a quarry owned by Holcim – NER, Inc., f/k/a Aggregate Industries – Northeast Region, Inc., ("Aggregate" or "plaintiff").  Pending before the Court is defendants' motion to dismiss (Docket No. 37) which will be allowed, in part, and denied, in part.

## I.  <u>Background</u>

Aggregate is a Massachusetts corporation with a principal place of business in Middleton, Massachusetts.  It owns and

operates a quarry located on the border of the Town of
Swampscott and the City of Salem, Massachusetts ("the Quarry").
The Quarry has been used to excavate rock, stone and other
materials from the ground for more than 100 years.  The Town of
Swampscott is a municipality located in Essex County,
Massachusetts.  The Board is a municipal entity holding general
supervisory powers within the Town and was constituted pursuant
to the Massachusetts General Laws.

The following facts are derived from the supplemental first
amended complaint and are accepted as true for the purpose of
these proceedings.  In the 1990s, the Board enacted an Earth
Removal By-Law ("the By-Law") requiring any person or business
to obtain an annual permit if it wanted to remove more than 600
cubic yards of natural materials from a parcel of land in the
Town.  The By-Law also created an advisory body, the Earth
Removal Advisory Committee ("ERAC"), to evaluate permit
applications and make recommendations to the Board as to whether
a permit should be issued and what conditions should be imposed.

Aggregate and its predecessors have obtained earth removal
permits from the Town each year since the By-Law was passed.
Plaintiff avers that, for years, it has negotiated directly with
the ERAC which has regularly recommended the approval of earth
removal permits that the Board has consistently accepted.  Such
permits are typically effective for a one-year period from July

through June.  The 2019-20 permit, however, was extended until
June 30, 2021, due to the COVID-19 pandemic.

During the course of negotiations for the 2021-2022 permit,
the Board and its Chairman, Peter Spellios ("Spellios"), took an
active role in proposing additional restrictions based upon a
new "human annoyance" standard.  Some ERAC members expressed
concerns about the nature of the Board's involvement and the
purported bias of its members.  For instance, many of the
restrictions proposed by the Board tracked changes which
Spellios had proposed without success to add to the Town By-
Laws.

Plaintiff received a draft permit from the Board in April,
2021, which modified several provisions that Aggregate and the
ERAC had previously agreed upon.  Aggregate discussed the new
draft with the ERAC and ultimately received an extension of time
from the Board in order to submit comments and suggest changes
to the restrictions.

Aggregate provided written feedback on the draft permit
prior to the June 16, 2021, meeting at which the permit was
voted upon and its counsel attended the meeting and spoke on his
client's behalf.  Among other issues, plaintiff objected to the
imposition of a restriction which would prevent it from blasting
at a depth of greater than 50 feet.  Although the Board voted to
approve the permit over Aggregate's opposition and despite

statements by some ERAC members that more time would be beneficial, it explained that Aggregate could seek modifications to the permit after it was issued.

In November, 2021, Aggregate filed a complaint in this Court and, in April, 2022, it filed an amended complaint in response to defendants' initial motion to dismiss. Defendants moved to dismiss the amended complaint as well but their motion was rendered moot when Aggregate filed this supplemental first amended complaint ("SFAC") in November, 2022, with the consent of defendants and by permission of the Court. Defendants filed a motion to dismiss the SFAC shortly thereafter which plaintiff timely opposed in January, 2023.

Aggregate's June, 2021, earth removal permit ("the 2021 Permit") was set to expire on June 30, 2022, during the pendency of this litigation. In the meantime, Aggregate timely submitted its application for a 2022-2023 permit. The new application was not acted upon but, in June, 2022, Aggregate informed the Town that it planned to continue operating in accordance with the 2021 Permit. On June 29, 2022, the Board voted to extend the 2021 Permit for 90 days and, on September 28, 2022, for an additional 120 days. Plaintiff disputes the adequacy of the notice provided for those meetings and challenges the validity of the proceedings.

II.  <u>**Motion to Dismiss**</u>

    A.  **Standing**

Before reaching the merits of whether the complaint has stated an actionable claim for relief, the Court must address defendants' contention that plaintiff lacks standing and, therefore, that its claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Article III, section 2, of the United States Constitution restricts federal court jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2.  In order to establish standing under the case-or-controversy requirement, a plaintiff must demonstrate: 1) that it has suffered an injury in fact, 2) a causal nexus between the injury it suffered and the claimed wrong, and 3) a likelihood that the injury will be redressed by a favorable decision from the court. <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

The Town contends that Aggregate has not suffered an injury in fact and thus lacks standing.  The Supreme Court has defined an injury in fact as

> an invasion of a legally protected interest which is
> (a) concrete and particularized; and (b) actual or
> imminent, not conjectural or hypothetical.

<u>Lujan</u>, 504 U.S. at 560 (cleaned up).

In order to be concrete, the complained-of injury must be "real, not abstract." <u>Spokeo, Inc.</u> v. <u>Robins</u>, 578 U.S. 330, 352

- 5 -

(2016).  Aggregate claims that it has been subjected to unconstitutional permitting restrictions which improperly limit the use of its property and will force it to incur significant revenue losses.  The ongoing nature of the alleged deprivation of its property rights and its claim of "imminent fiscal injury" constitute a real injury. Mass. v. U.S. HHS, 923 F.3d 209, 227 (1st Cir. 2019).  Further, an injury is particularized if it "affect[s] the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n. 1.  The actions of the Town directly and specifically affect Aggregate and the "imminent financial harm alleged would impact it in an individual way." Mass. v. U.S. HHS, 923 F.3d at 227 (cleaned up).

For an injury to be actual or imminent, the complained-of injury must have already happened or be sufficiently threatening.  A hypothetical injury speculated to occur at some future point cannot establish standing. Lujan, 504 U.S. at 564. Defendants contend that the alleged injury in this case is purely hypothetical because they have not yet enforced the 2021 Permit restrictions and have no specific plans to implement them in the future.  Aggregate responds that it is, however, currently unable to take certain actions because of the restrictions to which it is subject.  The Court will not require Aggregate to

> expose [it]self to liability before bringing suit to
> challenge the basis for the threat — for example, the
> constitutionality of a law threatened to be enforced.

MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 129 (2007).

**B.  Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the subject pleading must contain sufficient factual
matter to state a claim for relief that is actionable as a
matter of law and "plausible on its face." Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  A claim is facially plausible if,
after accepting as true all non-conclusory factual allegations,
the court can draw the reasonable inference that the defendant
is liable for the misconduct alleged. Ocasio-Hernandez v.
Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider
certain categories of documents extrinsic to the complaint
"without converting a motion to dismiss into a motion for
summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36
(1st Cir. 2013) (citing Watterson, 987 F.2d at 3).  For
instance, a court may consider documents of undisputed
authenticity, official public records, documents central to a
plaintiff's claim and documents that were sufficiently referred
to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

### C.  Application

#### 1.  Takings Clause

The Takings Clause prohibits the government from taking private property for public use "without just compensation." U.S. Const. amend. V.  It applies to the states through the Fourteenth Amendment to the U.S. Constitution. Barth v. City of Cranston, 44 F.4th 65, 70 (1st Cir. 2022).  A property owner may bring a claim for a violation of the Takings Clause against a federal, state or municipal government under 42 U.S.C. § 1983. See Knick v. Twp. of Scott, 139 S. Ct. 2162, 2177 (2019).

There are two traditional categories of Takings Clause violations: physical takings and regulatory takings. See Phillip Morris v. Reilly, 312 F.3d 24, 33 (1st Cir. 2002).  A physical taking involves a formal condemnation or physical appropriation of property. Id.  A regulatory taking may occur when a government actor places "significant restriction" upon an owner's use of his or her property. Id.

- 8 -

Courts have also recognized a third category of takings, namely, the unconstitutional conditions doctrine, whereby the government pressures an applicant for a land-use permit to give up its rights in exchange for permit approval. See Symes Dev. & Permitting LLC v. Town of Concord, 579 F.Supp.3d 246, 251 (D. Mass. 2022) (citing Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 835 (1987); Dolan v. City of Tigard, 512 U.S. 374, 384 (1994)).

### a.  Physical Taking

A physical taking occurs when the government

> uses its power of eminent domain to formally condemn property . . . physically takes possession of property without acquiring title to it . . . [or] occupies property . . . .

Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021). Such appropriations of private property require the government to "pay for what it takes." Id.

In the case at bar, the permitting conditions imposed by the Town are not alleged to have condemned Aggregate's property, to have physically possessed it or to have physically occupied it. Although it is not dispositive that the government action here was carried out through a permitting process, it is dispositive that the Town has not "physically taken property for itself or someone else". Id. at 2072. To the contrary, "[it] has instead restricted [Aggregate's] ability" to use the Quarry.

Id.  The Court therefore concludes that plaintiff has not pled a physical taking of its property.

### b.  Regulatory Taking

The imposition of regulatory restrictions on a landowner's use of his or her private property may constitute a total taking if it prevents "all economically beneficial or productive use of land." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992) (citation omitted).  Aggregate contends that the conditions of the 2021 Permit have, inter alia, effected a total taking of its land and subsurface rights below 50 feet.  It further claims that its ability to operate the Quarry has been "severely" and "substantially" restricted as a result of the subject conditions.  Such allegations do not claim a deprivation of all economically beneficial uses of the Quarry and thus cannot establish a total taking of plaintiff's land.

Instead, the severity and significance of the alleged deprivation of value is relevant under the Penn Central test for whether a regulatory taking has occurred. Id. at 1019 n.8 (distinguishing between the "categorial formulation" of a total, per se taking and the general takings analysis of Penn Central) (citing Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978)).  Outside the narrow circumstances which constitute a per se taking, courts apply the flexible, fact-specific standards developed in Penn Central to determine whether a

regulation constitutes a taking. <u>See</u> <u>Lingle</u> v. <u>Chevron U.S.A.</u> <u>Inc.</u>, 544 U.S. 528, 538 (2005).

The three-part <u>Penn</u> <u>Central</u> test involves an ad hoc, factual inquiry into: 1) the economic impact of the regulation on the claimant, 2) the extent to which the regulation interferes with investment-backed expectation and 3) the character of the governmental action. <u>Penn</u> <u>Central</u>, 438 U.S. at 124.

Accepting all of its allegations as true, this Court concludes that plaintiff has stated a claim for a regulatory taking under the <u>Penn</u> <u>Central</u> analysis.  Although there is no definitive measure of how much economic harm a plaintiff must allege, courts assess the likelihood and extent to which the challenged action "impairs the value or typical use" of plaintiff's property. <u>Maine Educ. Ass'n Benefits Tr.</u> v. <u>Cioppa</u>, 695 F.3d 145, 157 (1st Cir. 2012) (cleaned up).

Here, Aggregate asserts a loss in revenue of $34 million and an inability to meet a substantial portion of its customers' demands.  It also alleges the loss of its subsurface rights below 50 feet and other significant intrusions upon its property rights and economic interest in the Quarry.  Those allegations weigh in favor of a finding of a regulatory taking. <u>See, e.g.</u>, <u>FBT Everett Realty, LLC</u> v. <u>Mass. Gaming Comm'n</u>, 489 Mass. 702, 709, 187 N.E.3d 373, 382-83 (Mass. 2022) (applying the <u>Penn</u>

<u>Central</u> test and holding that a diminution of value from $75 million to $35 million was "significant").

The second <u>Penn Central</u> factor, whether the government action interferes with reasonable investment-backed expectations, weighs slightly in plaintiff's favor that there was a regulatory taking here.  In general, a court must evaluate the reasonableness of the claimant's purported expectations. <u>Maine Educ. Ass'n Benefits Tr.</u>, 695 F.3d at 154.  The factor is "difficult to define more concretely" but a claimant's expectations are diminished if it operates in a highly regulated industry. <u>Id.</u>

In the case at bar, the annual permitting process to which Aggregate was subject renders unreasonable any ironclad expectation of perpetual renewal.  Plaintiff does not, however, rely upon such an expectation.  Instead, Aggregate submits that the consistent annual permitting process gave rise to an expectation that the Town would follow certain procedures, pursue legitimate regulatory interests and impose conditions that reflect recommendations of the ERAC and/or scientific evidence.

According to plaintiff, defendants abandoned their long-standing permitting practices, acted arbitrarily and imposed unjustified and bias-driven restrictions.  Given such allegations at this stage of the proceedings, the Court

acknowledges the reasonableness of plaintiff's investment-backed expectations.

The third Penn Central factor concerns the character of the Town's action.  In general, a taking is more likely to have occurred when the government action can be characterized as a "physical invasion" rather than a regulation intended to adjust "the benefits and burdens of economic life to promote the common good." Penn Central, 438 U.S. at 124.

Even so, the exercise of a town's police power ostensibly taken to promote the common good may constitute a taking if it "does not substantially advance legitimate state interests". Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 485 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260 (1980)). In the pending case, the Town is alleged to have disregarded recommended permitting restrictions which would have advanced the common good in favor of irrational restrictions which were biased against Aggregate and only loosely based upon an amorphous "human annoyance" standard.

Accepting plaintiff's allegations as true and drawing all inferences in its favor, the Court finds that it has plausibly pled a regulatory taking under the Penn Central test.  Aggregate has not, however, stated a claim that there was a total or per se taking.

### c.  Unconstitutional Conditions

The government may not condition the approval of a "land-use permit on the owner's relinquishment of a portion of [its] property" unless there is an appropriate "nexus" and "rough proportionality" between the conditions and the likely impact of the land use. <u>Koontz</u> v. <u>St. Johns River Water Mgmt. Dist.</u>, 570 U.S. 595, 599 (2013).  A claimant must assert, however, that the government attempted to obtain an interest in its property in order to maintain a claim for unconstitutional conditions. <u>See, e.g., id.</u> (claimant refused to "surrender an interest in his land"); <u>Nollan</u>, 483 U.S. 825 (claimant was required to grant a public easement in order to obtain building permit); <u>Dolan</u>, 512 U.S. 374 (claimants disputed condition requiring that they dedicate land for a public bicyclist pathway).

In the pending case, the Town is not alleged to have conditioned the 2021 Permit on taking an easement or other property interest in the Quarry.  The Court will, therefore, dismiss plaintiff's Taking Clause claim to the extent it is based upon the unconstitutional conditions doctrine.

### 2.  Due Process

Plaintiff claims that it suffered a violation of both procedural and substantive due process.  For the reasons that follow, the Court concludes that it did not.

### a.  Procedural Due Process

To state a claim for the violation of procedural due process, a plaintiff must: 1) identify a protected liberty or property interest, and 2) establish that defendant(s), under color of state law, deprived it of that interest without providing constitutionally adequate process. See Gonzales-Droz v. Gonzales-Colon, 660 F. 3d 1, 13 (1st Cir. 2011).  Procedural due process demands that the government provide the affected party with notice and a meaningful opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319 (1976).

The Town does not dispute that Aggregate has a property interest in the continued operation of the Quarry.  The pertinent question is, therefore, whether Aggregate received constitutionally adequate notice and a meaningful opportunity to be heard prior to the adoption and subsequent renewals of the 2021 Permit.  The Court concludes that it did.

As previously described, the Board provided plaintiff with a copy of the draft permit in April, 2021, and, in early June, allowed plaintiff additional time to submit comments and suggested changes.  Aggregate submitted such feedback and appeared at the June 16, 2021, meeting at which the draft permit was voted on and adopted.  It had an opportunity to seek modifications to the 2021 Permit and the Town provided notice of future meetings at which the permit was renewed.

- 15 -

Plaintiff nevertheless disputes the adequacy of the process
it received with respect to several events: 1) Town officials
held a closed meeting in late April or early May of 2021, at
which a draft of the permit was finalized; 2) The June, 2021,
meeting was rushed and the resulting 2021 Permit was not based
on ERAC recommendations and/or scientific evidence, and 3)
Subsequent renewals of the permit were in violation of Town By-
Laws and occurred at meetings for which minimal notice had been
given.  None of those events negates the fact that plaintiff
received notice and a meaningful opportunity to be heard.

First, it is unremarkable that Town officials held at least
one closed meeting in the course of drafting and finalizing the
2021 Permit.  Aggregate had the opportunity to be heard by the
ERAC and the Board both before and after that meeting.  It
cannot have expected to be included in every discussion and
drafting session.  Next, while plaintiff disputes the outcome of
the June, 2021, meeting, it received an opportunity to be heard
with respect to the 2021 Permit before, during and after that
meeting.  Finally, the subsequent renewal of the 2021 Permit
occurred at meetings of which the Town did provide notice.  The
Town By-Law requiring that earth removal permits "shall be
issued for a period of not more than one (1) year" does not
directly address renewals and, even assuming a violation,
Aggregate itself notified the Town of its intention to operate

pursuant to the terms of the 2021 Permit pending the approval of a new permit application.  Thus, the renewal of the 2021 Permit did not constitute a procedural due process violation.

### b.  Substantive Due Process

To state a claim for the violation of substantive due process,

> the plaintiff must show <u>both</u> that the acts were so egregious as to shock the conscience <u>and</u> that they deprived him of a protected interest in life, liberty, or property.

<u>Harron</u> v. <u>Town of Franklin</u>, 660 F.3d 531, 536 (1st Cir. 2011).

Courts typically begin their analysis with whether the acts alleged shock the conscience, <u>i.e.</u> whether they are "truly outrageous, uncivilized, and intolerable". <u>Id.</u> ("the requisite arbitrariness and caprice must be stunning"). The First Circuit Court of Appeals ("the First Circuit") has repeatedly explained that "in the ordinary course", the substantive due process doctrine is not implicated by a discretionary land-use permitting decision even if that decision "violated state law or administrative procedures". <u>Mongeau</u> v. <u>City of Marlborough</u>, 492 F.3d 14, 17 (1st Cir. 2007).

Allegations that the Board imposed permitting restrictions which were biased, unfounded and in contravention of advisory recommendations from the ERAC do not rise to the level of outrageous or stunning conduct.  Plaintiff's claim for violation

of its substantive due process rights therefore does not meet the bar set by the First Circuit.

### 3.  **Declaratory Judgment Act**

Defendants seek dismissal of plaintiff's claims under the Declaratory Judgment Act "should the Court dismiss Aggregate's constitutional claims" because the Act does not provide an independent basis for subject matter jurisdiction.  The Court has not dismissed all of plaintiff's constitutional claims and finds that dismissal of its claims under the Declaratory Judgment Act would be unwarranted.

**ORDER**

For the foregoing reasons, the motion to dismiss of the defendants (Docket No. 37) is:

- as to the claims for a physical taking, a total taking and unconstitutional conditions asserted in Count I, **ALLOWED;**

- as to the claim for a regulatory taking asserted in Count I, **DENIED;**

- as to Count II, **ALLOWED;**

- as to Count III, **DENIED;** and

- to the extent that defendants seek dismissal of the entire SFAC on grounds that plaintiff lacks standing, **DENIED.**

**So ordered.**


    /s/ Nathaniel M. Gorton
    Nathaniel M. Gorton
    United States District Judge

Dated:  May 3, 2023

- 19 -